**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 21, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DEANGELO KEIYAWN THREATT,
a/k/a D'angelo K. Threatt, a/k/a Dangelo
Keyawn Threatt, a/k/a Dengelo Kei
Threatt, a/k/a D'Angelo Keiywan M-
Threatt, a/k/a D.K., a/k/a X,

    Defendant - Appellant.

No. 24-6262

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:23-CR-00368-D-1)**
_____

Amy W. Senia, Assistant Federal Public Defender (Virginia L Grady, Federal Public
Defender, with her on the briefs), Office of the Federal Public Defender, Denver,
Colorado, for Defendant-Appellant.

Cedric C. M. Bond, Assistant United States Attorney (Robert J. Troester, United States
Attorney, and Tanner Herrmann, Special Assistant United States Attorney, on the brief),
Office of the United States Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.
_____

Before **CARSON**, **KELLY**, and **ROSSMAN**, Circuit Judges.
_____

**CARSON**, Circuit Judge.
_____

Federal Rule of Criminal Procedure 32(i)(1)(A) requires district courts to "verify" that a defendant and his attorney have read and discussed the presentence investigation report ("PSR"). This requirement helps ensure that defendants receive due process by safeguarding against a district court basing a criminal sentence on inaccurate information. When a district court directly asks defense counsel if he and the defendant have read and discussed the PSR, typically, an affirmative answer satisfies the district court's obligation under Rule 32(i)(1)(A). But when the defendant expressly says otherwise, the district court must follow up on that assertion to satisfy Rule 32(i)(1)(A).

Here, the district court asked defense counsel if he and Defendant D'Angelo Threatt had the opportunity to read and discuss the PSR.[1] Defense counsel replied, "Yes, your Honor." But during allocution, Defendant stated that his attorney never went over his PSR with him. The district court declined to take up the issue. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we vacate Defendant's sentence and remand for resentencing.

I.

On July 9, 2023, an officer with the Oklahoma City Police Department observed Defendant walking in the middle of a road. Suspecting Defendant of committing a pedestrian violation, the officer exited his vehicle and approached Defendant. The officer observed Defendant touching his waistband. As the officer

---

[1] In his briefing, Defendant states that his name is misspelled in this case and that the legal spelling of his first name is D'Angelo.

attempted to get Defendant's information, Defendant started to walk away. The officer asked Defendant to sit on the ground. Rather than sitting on the ground, Defendant crouched down and put his cell phone up to his ear. Defendant failed to comply with the officer's multiple requests to sit down on the ground, so the officer attempted to take Defendant into custody. As the officer placed his hands on him, Defendant ran away. The officer quickly brought Defendant to the ground. After the two briefly struggled in the grass, Defendant broke free and began running. The officer chased Defendant on foot. During the chase, Defendant discarded a firearm, which the police later recovered. A federal grand jury indicted Defendant with one count of felon in possession of a firearm under 18 U.S.C. § 922(g)(1), to which Defendant pleaded guilty.

Before sentencing, the probation officer prepared the initial PSR. The PSR set Defendant's base offense level at 24 because of his prior felony convictions. The PSR then recommended two sentence enhancements. The first enhancement added four offense levels under U.S.S.G. § 2K2.1(b)(6)(B) for use of a firearm in connection with another felony offense.[2] Specifically, the PSR alleged that Defendant—using the moniker "X"—struck a person across the face with a firearm about a month after his arrest in this case. The second enhancement added six offense levels under U.S.G.G. § 3A1.2(c)(1) for "creating a substantial risk of serious bodily injury" in "assault[ing]" the officer during the struggle in the grass. The PSR

---

[2] After amendments to the Guidelines in November 2025, this enhancement is now at U.S.S.G. § 2K2.1(b)(7)(B).

described Defendant getting "on top of the officer" and putting the officer "in a headlock" before he took off running. After subtracting three offense levels for acceptance of responsibility, the PSR set Defendant's total offense level at 31. Combined with Defendant's criminal history category VI, this offense level set Defendant's advisory Guideline range at 188–235 months. But because the statutorily authorized maximum sentence for Defendant's offense was fifteen years, the PSR calculated his advisory Guideline range at 180 months. Also relevant to this appeal, the PSR noted that Defendant claimed during the presentence interview that he worked at Sonic for about a year prior to his arrest in this case but that "[r]ecords received from Sonic reflect the defendant was never employed with their company."

Defendant, through counsel, raised several legal objections to the PSR. As to the four-level enhancement under § 2K2.1(b)(6)(B), he argued that the second incident did not qualify because it involved a different firearm. Regarding the six-level enhancement for allegedly assaulting the officer, Defendant argued that the enhancement required aggravated assault and, "on the facts," Defendant's alleged conduct did not rise to that level. In response, the probation officer supplemented the record with additional facts from an unattached police report to establish that Defendant's conduct qualified for the enhancement. The report asserted that Defendant tried to strangle or suffocate the officer. Defendant did not object to any of the facts alleged in the PSR or to the probation officer's responses to his objections.

At the sentencing hearing, the district court asked defense counsel if he "and the defendant each had an opportunity to review and discuss the [PSR]," to which defense counsel responded, "Yes, your Honor." The district court then overruled all of Defendant's objections and adopted the PSR in full.

After defense counsel argued for a downward variance, the district court allowed Defendant to allocute. During his allocution, Defendant stated that he had no family in the room that day because of "ineffective assistance of counsel." He stated that he had not heard from or talked to his counsel since he entered his plea nine months earlier. He also claimed that he did not know he had court that day until the day before and, if he had, his family members would be sitting in the courtroom. Defendant also emphasized that his counsel gave him the impression that, by pleading guilty, he would only serve three-and-a-half to four years. He then talked about how he had just finished training as a crew leader at Sonic just before he was arrested. Before he finished speaking, Defendant also said, "Oh, and PS, my counsel never went over my [PSR] with me after it came back in which I would have withdrew my plea."

After hearing from the government, the district court sentenced Defendant to the statutory maximum—180 months. It stated that it could not "articulate grounds for a downward variance in this case." The district court added that it would "not take up today any of the defendant's complaints stated during his allocution aimed at his defense counsel" because it was certain that "the defendant was advised in his

5

plea petition and at the change of plea hearing the maximum possible punishment he would face at sentencing."

On appeal, Defendant argues that the district court violated Rule 32(i)(1)(A) by imposing his sentence without first verifying that Defendant and his counsel read and discussed the PSR.

## II.

We first address our standard of review and whether Defendant adequately preserved his issue for appeal.  Next, we discuss whether the district court committed error.  Lastly, we determine whether Defendant experienced prejudice sufficient to warrant vacatur of his sentence.

## A.

The parties dispute which standard of review we should apply here.  Defendant argues that the district court violated Rule 32(i)(1)(A), which states that the court "must verify that the defendant and the defendant's attorney have read and discussed the [PSR] and any addendum to the report . . . ."  Generally, "[w]e review *de novo* the district court's compliance with the Federal Rules of Criminal Procedure." United States v. Tindall, 519 F.3d 1057, 1062 (10th Cir. 2008) (quoting United States v. Cereceres–Zavala, 499 F.3d 1211, 1214 (10th Cir. 2007)).  If error occurred, we remand for resentencing "only if [D]efendant suffered prejudice as a result of the Rule 32 violation."  United States v. Archer, 70 F.3d 1149, 1151 (10th Cir. 1995) (citing United States v. Rangel-Arreola, 991 F.2d 1519, 1526 (10th Cir. 1993)).  The government contends that plain-error review applies because Defendant did not

6

specifically and formally object to the sentence based on the court's alleged Rule 32(i)(1)(A) violation. It argues that Defendant's statement during allocution did not put the court on notice of a Rule 32 issue and thus Defendant did not properly preserve the issue for appeal.

Whether a Defendant preserves an alleged violation of Rule 32(i)(1)(A) for appeal by mentioning that his attorney did not review and discuss the PSR with him seems to be an issue of first impression in this circuit. The government urges us to adopt the Sixth Circuit's holding in United States v. Holt, 116 F.4th 599 (6th Cir. 2024). There, the Sixth Circuit applied plain-error review because they held "that defendants do not preserve an objection under Rule 32(i)(1)(A) merely by asserting that they have not read their [PSR] or discussed it with their attorney." Holt, 116 F.4th at 612 (citing United States v. Tarpley, 295 F. App'x 11, 16–17 (6th Cir. 2008); United States v. Tate, 516 F.3d 459, 465–66 (6th Cir. 2008)). "Rather, defendants must object to a court's decision to proceed with the sentencing despite this fact." Id. at 612–13 (citing Tate, 516 F.3d at 465–66). The Sixth Circuit ultimately determined that the defendant had not adequately preserved the issue and applied the more "demanding plain-error test" because "neither Holt nor his counsel" said anything about his failure to review the PSR "[w]hen given the 'opportunity' to object at the end of the resentencing . . . ." Id. at 613 (citing Fed. R. Crim. P. 32(i)(1)(A); United States v. Burleson, 419 F. App'x 649, 650–51 (6th Cir. 2011)).

Defendant argues that the Sixth Circuit is an outlier on this issue, citing several cases from other circuits. For example, he cites the Third Circuit's

7

unpublished opinion in United States v. Mark, 533 F. App'x 83 (3d Cir. 2013).

There, defense counsel "acknowledged having reviewed the PSR" but the defendant

"stated during his allocution that 'I haven't seen the [PSR] so I don't know what it

says.'" Id. at 88. The Third Circuit concluded that, because he "brought this issue to

the District Court's attention," the defendant "properly preserved" his Rule

32(i)(1)(A) challenge. Id. (citing United States v. Cherry, 10 F.3d 1003, 1013 (3d

Cir. 1993); United States v. Grajeda, 581 F.3d 1186, 1188 (9th Cir. 2009)).

Defendant also cites cases from the Seventh and Ninth Circuits, which both seem to

apply harmless error review—rather than plain-error review—even when the

defendant said nothing to the district court. See United States v. Tam, 82 F.4th 536,

539–40 (7th Cir. 2023); United States v. Soltero, 510 F.3d 858, 863–64 (9th Cir.

2007). Defendant also points out a First Circuit case, but there, the government

conceded that the defendant preserved the issue. See United States v. Scott, 877 F.3d

42, 49 (1st Cir. 2017).

Drawing from these cases and general principles from binding precedent, we

conclude Defendant adequately preserved this issue for appeal. First, we observe the

Supreme Court's interpretation of Federal Rule of Criminal Procedure 51, which

describes how a party preserves claimed error. In Holguin-Hernandez v. United

States, the Court stated that "[t]he rulemakers, in promulgating Rule 51, intended to

dispense with the need for formal 'exceptions' to a trial court's rulings." 589 U.S.

169, 174 (2020) (citing Fed. R. Crim. P. 51(a)). An objecting party is not required

"to use any particular language or even to wait until the court issues its ruling." Id.

8

(citing Fed. R. Crim. P. 51(b)).  "The question is simply whether the claimed error was 'brought to the court's attention.'"  Id. (citing Fed. R. Crim. P. 52(b)).[3]

Here, Defendant brought this issue to the court's attention.  A district court should be well aware of its duty to "verify that the defendant and the defendant's attorney have read and discussed the [PSR] . . . ."  Fed. R . Crim. P. 32(i)(1)(A). Defendant's statement during allocution—"my counsel never went over my [PSR] with me after it came back"—should have put the district court on notice that it needed to "verify" that Defendant actually did so, especially considering defense counsel's seemingly contrary assertion.

The role of allocution during sentencing, in general, also supports our reasoning.  The common-law right of allocution far predated the rule requiring it. Green v. United States, 365 U.S. 301, 304 (1961).  "As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal."  Id. (citing Anonymous, 3 Mod. 265, 266, 87 Eng. Rep. 175 (K.B.)).  We too have explained that a district court's denial of allocution at initial sentencing is "per se prejudicial and requires a remand without an investigation of prejudice."  United States v. Jarvi, 537 F.3d 1256, 1262 (10th Cir. 2008) (citing United States v. Torres-Palma, 290 F.3d 1244 (10th Cir. 2002)).  This is

_____

[3] We decline the government's invitation to adopt the more stringent Sixth Circuit approach, as we view it as inconsistent with the Supreme Court's ruling in Holguin-Hernandez and the plain language of Rule 52(b), which states that plain-error review applies when the alleged error "was not brought to the court's attention." Fed. R. Crim. P. 52(b).

so because even "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might," Green, 365 U.S. at 304, and allocution affords the defendant "a tool for providing information" to the court, United States v. Jimenez, 61 F.4th 1281, 1284 (10th Cir. 2023) (citing United States v. Bustamante-Conchas, 850 F.3d 1130, 1136 (10th Cir. 2017) (en banc)).  Thus, "defendants have the right to discuss *any* matter of their choosing during allocution." Jimenez, 61 F.4th at 1286 (citing Jarvi, 537 F.3d at 1261–62).  Although we recognize that a district court need not address every issue a defendant brings up during allocution, see Jarvi, 537 F.3d at 1262, it may be the only opportunity a defendant receives to inform the court that his attorney has not discussed the PSR with him, especially when his attorney suggests otherwise.  Practically speaking, Defendant could not have done more to preserve his argument for appeal.  Thus, we review for harmless error rather than plain error.

B.

We must first determine whether the district court committed error and violated Rule 32(i)(1)(A).  Again, district courts "must verify that the defendant and the defendant's attorney have read and discussed the [PSR] and any addendum to the report . . . ." Fed. R. Crim. P. 32(i)(1)(A).

Defendant argues that a district court violates Rule 32(i)(1)(A) when it proceeds with sentencing after a defendant informs the court that he did not review the PSR with counsel unless the record directly contradicts the defendant's claim.  He asserts that nothing in the record directly contradicted his claim.  According to

Defendant, his attorney merely confirmed that he "and the defendant each had an *opportunity* to review and discuss the [PSR]," not that they had in fact done so.

The government responds that the record before the district court allowed it to reasonably infer that Defendant read and discussed the PSR with his attorney. It points to defense counsel's response to the district court, as well as his motions for time extensions to file PSR objections stating that "additional time [was] needed to consult with" Defendant. These, the government argues, are sufficient to show that the district court "verified" that, despite his assertion to the contrary, Defendant reviewed and discussed the PSR with his attorney.

When it comes to the district court's obligations under Rule 32(i)(1)(A), we do "not require the court to address the defendant personally." Rangel-Arreola, 991 F.2d at 1525. We have said that a court "'may draw reasonable inferences from court documents, the defendant's statements, and counsel's statements' in determining whether the defendant and counsel had the opportunity to read and discuss the [PSR]." Id. (quoting United States v. Victoria, 877 F.2d 338, 340 (10th Cir. 1989)). A district court can draw a reasonable inference that a defendant has read and reviewed the PSR with his counsel when the district court asks counsel if he had an opportunity to review the PSR with his client and counsel responds affirmatively. United States v. Romero, 491 F.3d 1173, 1179–80 (10th Cir. 2007) (citing United States v. Frisby, 182 F.3d 933 (10th Cir. 1999) (unpublished)).

But that inference is not reasonable when, as here, the defendant openly denies that he has reviewed and discussed the PSR with his attorney. In that case, a district

11

court must further "verify" that the defendant and his counsel have done so. Here, the district court did not follow up on Defendant's assertion. Instead, it declined to take up "any of the defendant's complaints stated during his allocution aimed at his defense counsel" because it was certain that "the defendant was advised in his plea petition and at the change of plea hearing the maximum possible punishment he would face at sentencing." But that did not address whether Defendant had reviewed and discussed his PSR with his attorney, which serves purposes other than informing a defendant of his maximum possible punishment.[4] And the fact that counsel sought extensions does not help, as the extension requests do not show that defense counsel and Defendant actually did meet and discuss the PSR.

Defendant is also not making an ineffective assistance of counsel claim—which would generally be improper on direct appeal—as the government suggests. True, Defendant mentioned that phrase during allocution and included other complaints against his attorney. But a district court's Rule 32(i)(1)(A) violation is a separate challenge proper for direct appeal. Defendant is not complaining about his attorney's actions, but the actions of the district court.

---

[4] Defendant's description of his employment at Sonic during allocution also should have put the district court on notice that he had not read and discussed the PSR with his attorney, considering that the PSR stated that "[r]ecords received from Sonic reflect the defendant was never employed with their company." This contradiction further makes any inference that Defendant read and discussed the PSR with his attorney unreasonable.

In sum, the district court must take notice of this argument and "verify that the defendant and the defendant's attorney have read and discussed the [PSR] . . . ." Fed. R. Crim. P. 32(i)(1)(A).  It did not do so here.[5]  Thus, the district court violated Rule 32(i)(1)(A).

C.

Our inquiry does not end there.  We must determine whether the district court's Rule 32(i)(1)(A) violation was harmless.  We hold that it was not.

Rule 32 helps ensure a defendant's "due process right to a fair sentencing procedure which includes the right to be sentenced on the basis of accurate information." United States v. Rone, 743 F.2d 1169, 1171 (7th Cir. 1984) (citing United States v. Tucker, 404 U.S. 443, 447 (1972); Townsend v. Burke, 334 U.S. 736, 741 (1948); United States ex rel. Welch v. Lane, 738 F.2d 863, 864–65 (7th Cir. 1984)).  "While we recognize [PSRs] are critical to sentencing and fairness requires the defendant be given the opportunity to read the report and discuss it with counsel," Rangel-Arreola, 991 F.2d at 1526 n.5,  "resentencing is required only if the error was not harmless," United States v. Woodmore, 127 F.4th 193, 227 (10th Cir. 2025) (quoting United States v. Gieswein, 887 F.3d 1054, 1061 (10th Cir. 2018)).  "The

---

[5] Although the manner in which to conduct sentencing hearings is largely a matter within the district court's discretion, one possible way of avoiding this type of error might be for the district court to allow a recess, during which counsel and the defendant can review and discuss the PSR.  After counsel and the defendant review and discuss the PSR, the district court can assess whether to move forward with the hearing or continue the hearing to allow counsel to further investigate and lodge objections to the PSR.

government has the burden of demonstrating the error was harmless by a

preponderance of the evidence." Id. (citing Gieswein, 887 F.3d at 1061). Stated

otherwise, "the error must have been prejudicial: It must have affected the outcome

of the district court proceedings."[6] United States v. Olano, 507 U.S. 725, 734 (1993)

(citing Bank of Nova Scotia v. United States, 487 U.S. 250, 255–57 (1988); United

---

[6] The parties dispute what Defendant must show to establish prejudice here. The dispute, it seems, rests on some less-than-clear language from our case law addressing showings of prejudice for a Rule 32(i)(1)(A) violation. But we do not read these cases as overruling long-established precedent holding that the government bears the burden under harmless error review. To be sure, we have described what defendants failed to do in concluding defendants did not suffer prejudice. See Rangel-Arreola, 991 F.2d at 1526 (the defendant "point[ed] to no factual inaccuracies in computing his sentence," "offer[ed] no evidence to contradict" the district court's findings, and "assert[ed] no contradictory facts challenging the [PSR's] accuracy"); United States v. Martinez, 163 F. App'x 722, 728 (10th Cir. Jan. 19, 2006) (unpublished) (concluding that, absent "further explanation" of the alleged error or "discussion of how it could have affected his sentence," including "legal authority," defendant did not suffer prejudice); Archer, 70 F.3d at 1151 (defendant did not suffer prejudice when he "d[id] not assert contradictory facts that challenge the accuracy of the PSR" and "offer[ed] no evidence that the total amount of loss applied by the district court was incorrect"). In those cases, we faulted the defendants for not making any clear arguments related to prejudice without specifying which standard of review we applied. That did not happen here, as Defendant vigorously asserts that he experienced prejudice and explains what he would have argued to the district court had he been given the opportunity. Reading these cases as placing the burden on the defendant in this situation would directly conflict with established precedent placing the burden on the government to show harmless error. See Olano, 507 U.S. at 734 (describing how the difference in language between Rules 52(a) and (b) shifts this burden from the government under harmless error review to the defendant under plain-error review); United States v. Freeman, 70 F.4th 1265, 1281 (10th Cir. 2023) ("It is well-established that the burden of proving harmless error is on the government." (quoting United States v. Holly, 488 F.3d 1298, 1307 (10th Cir. 2007))); Woodmore, 127 F.4th at 227 (stating that the government bears the burden to demonstrate harmlessness under harmless error review for a procedural sentencing error).

States v. Lane, 474 U.S. 438, 454–64 (1986) (Brennan, J., concurring in part and dissenting in part); Kotteakos v. United States, 328 U.S. 750, 758–65 (1946)).

Defendant argues that the district court's error prejudiced him because the PSR contained multiple factual inaccuracies that he would have challenged had counsel reviewed the PSR with him. First, he claims that he was not the person known as "X" who struck a person across the face with a firearm, which led to a four-level enhancement. Second, he contends that the PSR's facts relating to his struggle in the grass with the officer were not true, which led to a six-level enhancement. Finally, he argues that the PSR incorrectly stated that he did not work at Sonic, which destroyed his credibility during the sentencing hearing. He argues that the district court relied on these factual inaccuracies in calculating his sentence. He claims that, had he been able to challenge them, both his advisory Guideline range and ultimate sentence would have been much lower.

The government—in insisting that plain-error review applies—argues that Defendant has not met his burden to show prejudice. It also argues that Defendant suffered no prejudice because he had been "placed on notice" of the PSR's factual statements related to the struggle in the grass and the pistol-whipping incident. But just because Defendant may have otherwise been aware of these factual allegations against him does not cure any prejudice resulting from Defendant being unable to contest certain material facts after review of the PSR with his counsel.[7] The

---

[7] We express no opinion on the merit of the factual objections Defendant discusses on appeal.

government offers no other explanation for why Defendant did not suffer prejudice. We therefore conclude the district court's error was not harmless.

We VACATE the district court's imposed sentence and REMAND for resentencing consistent with this opinion.